FILED

1  Stoddard White Jr.
2  2221 West Grouse Ave.       2011 MAR -8 PM 3: 35
   Nampa, ID 83653
3  Telephone: (208) 546-4955   CLERK U.S. DISTRICT COURT
   Facsimile: (208) 546-4955   CENTRAL DIST. OF CALIF.
4  Pro Se                      LOS ANGELES

5                              BY _____

6              **UNITED STATES DISTRICT COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
7                 **WESTERN DIVISION**

8                              # CV11-01987
9  STODDARD WHITE JR., an individual,
                                **CASE NO:**   5JO (SHx)
10             Plaintiff(s)

11                             **COMPLAINT FOR:**

12                             1.  **FRAUD**
13  vs.                        2.  **COPYRIGHT**
                                   **INFRINGEMENT**
14                             3.  **CONTRIBUTORY**
                                   **INFRINGEMENT**
15  TWENTIETH CENTURY FOX      4.  **ACCOUNTING**
    CORPORATION et al,         5.  **DECLARATORY**
16  a Delaware corporation, with its principal   **RELIEF;**
17  place of business in California,
    CONUNDRUM ENTERTAINMENT,   6.  **STATE COMMON**
18  a private California Company   LAW UNFAIR
    PETER J. FARRELLY, an individual
19  ROBERT L. FARRELLY JR. an individual   COMPETION
20  FRONTIER PICTURES, a California corporation
    EDWARD DECTER, an individual   **DEMAND FOR JURY TRIAL**
21  JOHN J. STRAUSS, an individual
22  FRANK BEDDOR, an individual, AUTOMATIC
23  PICTURES, a California corporation

24             Defendant(s)

25

26
─────────────────────────────────────────
27
28  Plaintiff in the above captioned action hereby alleges as follows:

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR - 2 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY





```
Court Name: U.S. District Court
Division: 2
Receipt Number: LA011386
Cashier ID: jacash
Transaction Date: 03/08/2011
Payer Name: STODDARD WHITE JR.

CIVIL FILING FEE
  For: STODDARD WHITE JR.
  Case/Party: D-CAC-2-11-CV-001987-001
  Amount:        $350.00

CHECK
  Check/Money Order Num: 4113
  Amt Tendered:  $350.00

Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:        $0.00


No refunds without original
receipt. Returned checks will be
assessed a fee of $45.00.
```

**INTRODUCTION**

1.     At all times mentioned herein, Plaintiff Stoddard White Jr.   ("Plaintiff" or "White") was an individual residing in El Dorado County, CA, and now Canyon County, ID, and the sole author of the wholly original screenplays entitled, "Winter Games."

**JURISDICTION AND VENUE**

2.     This action arises under the Copyright Laws of the United States (Title 17, U.S.C. SS 101 et seq.) and common law of the State of California.

3.     This court has exclusive jurisdiction over this action under 28 U.S.C. SS 1331 and 1338 in that this action involves claims arising under Copyright Laws of the United States.   To the extent that this action is based on diversity of citizenship, 28 U.S.C. SS 1332.

4.     Venue is proper in this district pursuant to 28 U.S.C. SS 1391 and 1400 in that defendant(s) transact business in the county of Los Angeles, State of California.

**PARTIES**

5.     At all times mentioned herein, Defendant Twentieth Century Fox Corporation, et al. (herein referred to as "Fox" or "Defendant"), is a corporation incorporated under the laws of Delaware with the business address of.

6.     At all times mentioned herein, Defendant Conundrum Entertainment (herein referred to as "Conundrum" or "Defendant"), is a California corporation with the business address of.

2

7.      Upon information and belief, at all times mentioned herein, Defendant Peter J. Farrelly ("Peter" or one of two "Farrelly Brothers"), was an individual residing in Los Angeles County, State of California.

8.      Upon information and belief, at all times mentioned herein, Defendant Robert L. Farrelly Jr. ("Bobby" or one of two "Farrelly Brothers"), was an individual residing in Los Angeles County, State Of California.

9.      At all times mentioned herein, Defendant Frontier Pictures, Inc. (herein referred to as "Frontier Pictures" or "Defendant"), is a California corporation with the business address of.

10.     Upon information and belief, at all times mentioned herein, Defendant Edward Decter ("Decter") was an individual residing in Los Angeles County, State of California.

11.     Upon information and belief, at all times mentioned herein, Defendant John J. Strauss ("Strauss") was an individual residing in Los Angeles County, State of California.

12.     Upon information and belief, at all times mentioned herein, Defendant Frank Beddor ("Beddor") was an individual residing in Los Angeles County, State of California.

13.     At all times mentioned herein, Defendant Automatic Pictures, Inc. (herein referred to as "Automatic Pictures" or "Defendant"), is a California corporation with the business address of.

14.     Plaintiff is unaware of the true names and capacities of the Defendants sued

3

herein as DOES 1 through, inclusive, and for that reason, sues such defendant under such fictitious names.  Plaintiff is informed and believed and based thereon alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants.  Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously named Defendants are ascertained.  As alleged herein, Defendants shall mean all named Defendants, and all fictitiously named Defendants.

15.     Plaintiff is informed and believes and based thereon alleges that Defendants at all times to this action, where the agents, servants, partners, joint venturers and employees of each of the other Defendants and in doing the acts alleged herein were acting with the knowledge and consent of the other Defendants in this action.  Alternatively, at all times mentioned herein, each of the Defendants conspired with each other to commit the wrongful acts complained of herein.  Although not all the Defendants committed all of the acts of the conspiracy or were members of the conspiracy at all times during its existence, each defendant knowingly performed one or more acts in direct furtherance of the objectives of the conspiracy.  Therefore, each defendant is liable for the acts of all of the other conspirators.

16.     Notwithstanding any 'Statute of Limitations' or alleged 'Fraud' according to the "Constitution of the United States' an original author's work is 'Constitutionally Protected' for his lifetime plus seventy years.  ((i.e.): If an author lives to be eighty years old and he copyrighted his work at age thirty, that protection lasts for the remaining 50 years left of his lifetime, plus an additional 70 years for his heirs, for a total of 120 years:

4

(50 + 70 = 120 years). If the author's copyrighted work is a 'work for hire' and there are the same circumstances as above, the author is 'Constitutionally' protected for his lifetime plus 90 years.   Therefore if the author copyrighted his work at age thirty, then the author and /or his heirs are 'Constitutionally' protected from copyright infringement /intellectual property theft for the remaining 50 years of the authors lifetime, plus an additional 90 years for his heirs, for a total of 140 years: (50 + 90  = 140 years).   These 'Constitutional Laws' are verified in the U. S. Constitution, the United States Department of Justice website, the same website for the Attorney General of the United States. (Details: Google: Wikipedia: United States Copyright Law). The alleged confirmation of alleged fraud on 3/29/08 and the alleged multiple counts of on-going copyright theft, (3/08), of the original copyrighted works contained herein are well within the Constitutional Law time frame for prosecution in this particular Copyright Infringement / Intellectual Property Theft Case.

## THE PROTECTED WORK

17.    In or about 1987, Plaintiff authored the wholly original screenplay entitled, "Winter Games" (the "Screenplay"). Thereafter, on September 14, 1987 Plaintiff registered "Winter Games" with the U.S. Copyright Office, registration no. PAu001008196: (PAu1-008-196).   In or about 1991, Plaintiff updated and registered wholly owned screenplay entitled "Winter Games" with U.S. Copyright registration no. PAu 001486963: (PAu 1-486-963).   Due to the alleged theft in or about April / May 1992 by "Farrelly Brothers et al." from the State of Nevada Film Office, Plaintiff rewrote/re-edited "Winter Games" in or about 1993.   Thereafter, on April 11, 1994, Plaintiff updated and re-registered wholly owned original 183 page double screenplay

5

"Winter Games" with U.S. Copyright Office, registration no. PAu001850029: (PAu 1-850-029). Plaintiff's discovery in or about 1995 of Defendants' similar theme and location in "Dumb and Dumber." Thereafter, on April 13, 1998, Plaintiff updated and again re-registered wholly owned original screenplay "Winter Games" with U.S. Copyright Office, registration no. PAu002286125: (PAu 2-286-125).   Plaintiff's discovery in or about 2003 of same theme and location as 'Dumb and Dumberer.' Thereafter on September 14, 2004, Plaintiff updated and again re-registered wholly owned original screenplay with U.S. Copyright Office, registration no. PAu002894232: (PAu 2-894-232).

18.    In or about April 1992, the State of Nevada Film Office staff agreed to help with pre-production of Plaintiff's movie "Winter Games." In or about April 10, 1992, Plaintiff, at the request of the associates of the State of Nevada Film Office, mailed his 1991 screenplay using the USPS, to Film Office along with some production information. In or about April 13, 1992 to May 28, 1992, Plaintiff's 3/22/91 screenplay was handed out, without Plaintiff's permission, to Defendants' "Farrelly Brothers et al.," by State of Nevada Film Office. In and about June 1995, the Plaintiff's 4/11/94 screenplay was also handed out, without Plaintiff's permission, to "Farrelly Brothers et al.," by an associate of State of Nevada Film Office.   (Contact information was clearly visible but neither screenplay was ever returned).

19.    In or about June 1995, Defendants' "Farrelly Brothers" et al., 'King Pin' screenplay was handed out to Plaintiff, (permission unknown), by an associate of the State of Nevada Film Office.   Plaintiff returned 'King Pin' screenplay to film office in or about

6

two to three days. In and about 1992 to 1995, Associate at State of Nevada Film Office asked if Plaintiff wanted to work on future media projects with Farrelly Brothers on more than one occasion.   In or about 1992 to 1995, Defendants did location scouting and filming in Nevada.   The Farrelly Brothers mention working on 'King Pin' on their 'Directors Commentary' in Chapter 13 of the DVDs for "There's Something About Mary" (i.e.) TSAM. In or about late 1995, Defendants as the co-directors of the movie, 'King Pin,' filmed part of the movie at the National Bowling Stadium located in Reno, Nevada. Plaintiff is informed and believes and on that basis that The Farrelly Brothers had business relationships with the State of Nevada Film Office.

## DEFENDANTS' INFRINGEMENT OF PLAINTIFF'S "WINTER GAMES"

## SCREENPLAYS

20.    In or about March 9, 2008, Plaintiff discovered the same unusual literary theme, an exact product placement by name, specifically "Pizza Hut," and a similar pool location, contained in Plaintiff's 1994 screenplay. Unhitched also contained a 'Comedy Pitch' Plaintiff presented as a sample of his comedy writing in or about September 17, 2007 at Fox Television Studios. The similar scene from Plaintiff's screenplay is using a swimming pool as the setting for a confrontation between a somewhat heavy set female and her male significant other as he comments on her diet as she is eating pizza in a pool setting.   The allegedly stolen 'Comedy Pitch' includes: A parent throwing a football to a child over a pool and yelling "Go Deep!" as in Mr. White's screenplay there was pizza floating in the pool.

21.    After viewing several episodes of the 'Unhitched' Television Series on Fox

7

during March 2008, and later on the internet, Plaintiff formed the belief that the television series was very similar to Plaintiff's 1994 Screenplay, and 'Comedy Pitch' given at Fox Television Studios, incorporating wholly owned original elements therefrom.   Plaintiff alleges confirmation of the above alleged copyright infringements and the theft of 'Comedy Pitch,' beginning in or about March 29, 2008, and reopened a prior investigation. Plaintiff alleges recent 2008, 2009, and 2010 investigations have uncovered a conspiracy of alleged fraud by Defendants.   Because of the allegedly fraudulent and ongoing theft of Plaintiff's copyrighted material from 1998 to 2008, Plaintiff is requesting that the 'Three Year Statute-of-Limitations,' except as it pertains to Fraud, to not be enforceable in this particular case because of the following factors:

22.     In or about March 2008, Plaintiff watched some of the March 2008 episodes of the Fox 'Unhitched' television series and then watched missed episodes later on the internet.   In or about March 2, 2008 through March 30, 2008, during the airing of in or about six television episodes of 'Unhitched,' Plaintiff discovered the same unusual literary theme, an exact product placement by name, specifically "Pizza Hut," and a similar swimming pool location, contained in Plaintiff's 1994 screenplay.   Unhitched also contained a 'Comedy Pitch' Plaintiff presented as a sample of his comedy writing in or about September 17, 2007 at Fox Television Studios in Los Angeles, CA. The similar scene from Plaintiff's screenplay and Defendants' television series is using a swimming pool as the setting for a confrontation between a somewhat heavy set female and her male significant other; the male comments on her diet as she is eating pizza in a swimming pool setting.   The allegedly stolen 'Comedy Pitch' includes: A parent throwing a football to a

8

child over a pool and yelling "Go Deep!" As in Mr. White's screenplay, pizza was also floating in the pool.

23.   At the end of the series, Plaintiff continued to suspect copyright thefts and re-opened an earlier investigation of alleged copyright thefts.  Plaintiff alleges that the ensuing legal research on the U.S. Copyright Website  in or about March 29, 2008, confirmed a fraudulent 1989 date on the 1/13/98 'Shooting Draft,' was not the correct copyright date for the original screenplay for TSAM, nor some other registrations pertaining to TSAM.   The truth is the official copyright date for the original screenplay for TSAM is 8/13/92. California law states that when a Plaintiff allegedly discovers fraud, Plaintiff has three years to file a lawsuit, time commencing on date of discovery of fraud, and not the occurrence.   Plaintiff alleges that he has until, in or about, March 29, 2011, in or about three years from the date he allegedly verified the fraud, to file this case.

24.   After viewing several March 2008 television episodes and the March 2008 advertisements of the Fox 'Unhitched,' Television Series, Plaintiff formed the belief that the 'Unhitched' television series was very similar to Plaintiff's 1994 Screenplay, and 'Comedy Pitch' given at Fox Television Studios, incorporating wholly owned original elements therefrom.  Although not an expert in copyright law, the similarities between Plaintiff's screenplay and the defendants' television series 'Unhitched,' were so similar, that Plaintiff suspected from an earlier investigation, that there may be something fraudulent about the copyright dates and began researching the extensive entries for copyright registrations pertaining to TSAM on the U.S. Copyright Office Website. At first Mr. White found several U.S. Copyright registrations pertaining to TSAM, including the

9

1/13/98 'Shooting Draft,' listing a wrong and allegedly fraudulent 1989 copyright date, as the official copyright date, for the original screenplay for TSAM, under 'previous registration.' Since this now allegedly fraudulent copyright date came up before in a previous investigation, as the apparent official copyright date on more than one registration pertaining to TSAM, Mr. White and his legal advisors did not give it a second thought until he discovered a discrepancy on the U.S. Copyright Office Website, on March 29, 2008. After several hours of researching the many registrations pertaining to TSAM, Mr. White located one registration that listed 8/13/92 as the official copyright date for the original screenplay for TSAM, and not a 1989 copyright date. (PAu 1-663-163).

25.    The discovery confirmed the reason as to why there were similarities between the Defendants' 'Unhitched' Television series and his 1991 and 1994 screenplays. By registering the 1/13/98 'Shooting Draft,' and other registrations with a fraudulent 1989 copyright date for the original screenplay for TSAM, it made it appear that all five Defendants, as co-writers, including Fox, had an earlier 1989 copyright date than Plaintiff's 3/22/91 screenplay. Mr. White's 3/22/91 screenplay was allegedly stolen from the Nevada Film Office by the Farrelly Brothers in or about mid April 1992-May 1992. Although allegedly fraudulent, registering the 1/13/98 'Shooting Draft' with a wrong 1989 copyright date, made it appear that not only had the five Defendants, as cowriters of the 1/13/98 'Shooting Draft,' had acquired an copyright earlier than Mr. White, but it also made it appear that the Defendants owned the copyrights to the allegedly stolen copyrighted material for, but not exclusive to, the Defendants' media projects material listed in this Complaint: (Fraudulent Defendants'1989 copyright is in or about two years

10

earlier than Plaintiff's official 3/22/91 copyright date).  If the Defendants had registered the 'Shooting Draft,' and other registrations pertaining to TSAM with the official copyright date of 1992, (8/13/92), vs. the fraudulent 1989 date, than it would be obvious that Mr. White had, and in fact does have, an earlier copyright date than Defendants and would own, and in fact does own, the copyrights to the stolen copyrighted   material listed in Complaint: (Plaintiff's official 3/22/91 copyright is in or about one year and five months earlier than Defendants' official 8/13/92 copyright and therefore Mr.  White owns the copyrights to the stolen material).

26.    Therefore Mr. White owns the copyrights to the stolen comedy material from his copyrighted works including the content from the in or about twenty pages of comparisons between Mr. White's stolen screenplays and Defendants' media projects listed in this Complaint including, but not exclusive to, the following:   In addition to the Farrelly  /Conundrum / Fox Television Series 'Unhitched,' Plaintiff discovered several other copyright infringements for other Defendants' media projects listed in Complaint, all containing comedy material from Mr. White's stolen copyrighted works, including but not limited to the Defendants' Fox Television series 'Unhitched,' the Defendants' movie 'Me, Myself and Irene,' the advertising for the DVD cover for 'Stuck on You,' and the award winning content and major advertising from Mr. White's  'Fight Scene,' for the movie TSAM.   The in or about six pages, (pages 79-81 & pages 100-102), that were stolen from Mr. White's copyrighted 1994 screenplay for the movie TSAM, (and the 43 known DVD Editions for TSAM), and for the grocery store scene in the movie 'Me, Myself, and Irene,' were instrumental in generating a fraudulent $1.71 billion in Total Media Sales for

11

Defendants (est.). Because Mr. White is not a copyright expert and because the Defendants did not always steal the copyrighted material verbatim, Mr. White was at first, during the initial investigation in or about May 2008, having a difficult time convincing lawyers and law firms of the similarities between his screenplays and the Plaintiff's media projects listed in this Complaint.   It was not until in or about the Summer/Fall /Winter of 2010, and after assembling in or about twenty pages of information regarding the similarities between Mr. White's screenplays and the Defendant' media projects, that lawyers agreed that the 'Shooting Draft,' was filed with an alleged fraudulent 1989 copyright date and that there were alleged copyright thefts.

27.     Because of the allegedly fraudulent and ongoing theft of Plaintiff's copyrighted material from July 15, 1998 to March 2008, Plaintiff is once again requesting that the 'Three Year Statute-of-Limitations' not be enforceable in this particular case because of the following factors:

(a)     Plaintiff alleges a fraudulent and successful cover up of copyright theft by all five Defendants, as co-writers, by filing with the U.S. Copyright Office, an allegedly fraudulent 1989 copyright date for the 'previous registration' for the 1/13/98 "Shooting Draft" for the movie 'There's Something About Mary." ("TSAM"):(PAu002267910).

Plaintiff alleges that considering the checks and balances and the breadth and depth of three separate corporations, including Twentieth Century Fox Corporation, Conundrum Entertainment, and Frontier Pictures, and their combined staff, that the odds of various entertainment industry professionals, including executive producers, five co-writers, co-directors, producers, lawyers, etc.,   missing something as important as filing a

12

'Shooting Draft,' for a major motion picture, with an incorrect 1989 Copyright Date, (an arbitrary creation date), that is in or about three years earlier than the official 8/13/92 copyright date, is a virtual impossibility.

28.   Although Plaintiff does not take full credit for the success, it is estimated, (using a formula from AMRO Bank and actual data), Defendants have generated in or about $1.71 billion in 'Total Media Sales,' for just two movies, (in or about $1.19 billion for just TSAM and in or about $519 million for Me, Myself, and Irene), using Plaintiff's copyrighted material, including unusual scenes, unusual locations, and unique characters. This copyrighted material stolen from Plaintiff screenplay for just defendants media project TSAM, includes major award winning content, the major advertising including in or about thirteen out of the fourteen major advertising trailers for the movie TSAM, in or about 43 known DVD editions for just TSAM, and other advertising promotions including some movie posters and some outside and inside DVD covers using Mr. White's copyrighted material. Decter and Strauss called this scene 'One of the Funniest in Film.'

The U.S. Copyright Office did not catch this wrong and allegedly fraudulent copyright date until Plaintiff verified the discrepancy with an agent of the U.S. Copyright Office in or about May 2009 and again in or about April 2010 with a motion picture copyright specialist and a manager in charge of copyright registrations.

29.   In addition to five Defendants as co-writers, signing and registering the 1998 'Shooting Draft,' for the 1998 movie "TSAM," with the allegedly fraudulent 1989 copyright date, (?/?/89), instead of the actual 8/13/92 copyright date for the original screenplay for TSAM, Plaintiff alleges that The Farrelly Brothers orchestrated the dialogue

13

with Defendants and original writers Decter and Strauss, and defendant Producer Frank Beddor, to cover up the alleged theft by mentioning specific dates that do not line up with the official 8/13/92 copyright date, (or actual pre-production and production dates), but in fact support the allegedly fraudulent 1989 copyright date, a difference of in or about three years: (8/13/92 minus ?/?/89 = in or about 3 years).

30. Plaintiff alleges that the research for this case, will reveal that there are several unique and specific 'directorial instructions' that are allegedly only found in or about three pages, (pages 79-81), of Mr. White's 1994 Screenplay and in or about two consecutive scenes for Defendant's Movie TSAM, (Ch.22-23). However these unique stage directions are found in only both Plaintiff's Screenplay and Defendants' movie TSAM, but are not found in Defendants' Screenplay (1/13/98 'Shooting Draft.'). These similar stage directions include but are not limited to some unusual camera angles, unusual props, an open car window, and specific actors' stage directions, for not only the similar 'Fight Scene,' but also the scene that immediately follows the 'Fight Scene.' Therefore the allegedly stolen comedy material for the 'Fight Scene,' and the scene that follows the 'Fight Scene,' had to come from Mr. White's allegedly stolen copyrighted screenplay, because the defendants screenplay, (the 1998 'Shooting Draft'), for the movie TSAM, does not contain these specific directorial instructions, (that are only found in both Mr. White' Screenplay and the defendants' movie TSAM). These unique stage directions that are found in the TSAM 'Fight Scene,' are for the most part in the same chronological order as found in Mr. White's Screenplay, including but not limited to the scene immediately following the 'Fight Scene.' However the Plaintiff's screenplay the 1/13/98 'Shooting

14

Draft,' is not in the same chronological order as the movie TSAM and Mr. White's screenplay. Therefore the defendants had to get these stage directions from Mr. White's screenplay and not their own screenplay, the 1/13/98 'Shooting Draft.'

Plaintiff therefore alleges that all five defendants as co-writers then orchestrated their 'Directors, and Writers Commentaries' to coincide with sixth defendant Frank Beddor's 'Producers Commentaries.' Plaintiff alleges that   all six defendants commentaries, (including a narrator on a Fox DVD), deceived Plaintiff and copyright experts, as recently as October 2009, into fraudulently believing the official copyright date for the original screenplay for TSAM was 1989, instead of officially1992.

31.   Plaintiff alleges the following summary of incidences that led to the discovery of the allegedly fraudulent but successful cover up including but not exclusive to the following: 1.The Farrelly Brothers in their own words on their own recent 'Director's Commentaries' both confess to the following in Chapter 22 of recent TSAM DVDs. The Farrelly Brothers dual confessions take place right before they introduce Mr. White's 'Fight Scene,' (one of the major scenes in question in this 'Complaint'), with the following confessions:

(a)   "We kinda stole a lot of "stuff" from people didn't we?" "We wrote very little when you think about it.' "We got a script that Ed Decter and John J. Strauss had written and got guys to punch it up for us but we took credit." "Yah" "It's amazing they asked us to do the commentary." This stolen 'Fight Scene' won several major movie awards for all six defendants and some cast members and was used for in or about thirteen out of fourteen major advertising trailers for the movie TSAM.

15

32.     On several of their Directors' DVD Commentaries, the Farrelly Brothers admitted to stealing a lot of stuff from people, writing very little of the movie, and not deserving the credit for the success. Mr. White will however take credit for his 'Fight Scene,' including his award winning characters, including 'Puffy' (Mr. White's Dusty), 'Magda' (Mr. White's Liz Eard),' and Ted (Mr. White's Sam), character in the 'Fight Scene.' This scene and the characters that were created by Mr. White, were instrumental in winning several major motion picture awards for not only all six co-defendants, but also several members of the cast.

33.     As the following comparisons will demonstrate, this Pilot Episode co-executive produced and co-directed by Peter and Bobby Farrelly. This episode, contained not only Mr. White's copyrighted material, for once again not only the major content for the 'Pilot Episode' but also for the major advertising.  The in or about one minute television advertising spot that introduced the entire Farrelly Brothers / Conundrum Entertainment/ Fox Televisions series and the in or about 22 minute pilot episode and other episodes, contained several alleged copyright infringements from Mr. White's allegedly stolen 1994 Screenplay. The creator(s) of the March 2008 Television Series had copied directly and substantially from Plaintiff's Screenplay and 'Comedy Pitch.' The similarities between the Television Series, are so striking that it is a virtual impossibility that the former could have been created independently from the latter, including inter alia, the following: (edited for complaint).

34.     RE: The "Peter" and "Bobby" Farrelly/ Conundrum Entertainment/Fox 'Unhitched' Television Series

16

(a) <u>Theme</u>: Plot:

35.     In addition to a pizza by the pool scene, Plaintiff's Comedy 'Winter Games' Screenplay deals with a proctologist, a   hooker (mistaken), an intoxicated young blonde female with a Scandinavian*Accent, an airplane, an airport, three different neighborhood bars including an Irish Bar in the United States, a cigarette incinerating in a female character's hand at the bar, and a living room and bedroom setting of the lead male character as the main setting; Defendant's Television Series: In addition to a pizza by the pool scene, Defendants' Comedy Television Series deals with a proctologist, a hooker, two intoxicated young blonde females with Scandinavian* Accents, airplanes, airports, three different neighborhood bars including an Irish Bar in the United States, a cigarette incinerating in a female character's hand at the bar, and a living room and bedroom setting of the lead male character as the main setting.

(Plaintiff's Screenplay: Three Bars: #1: Nightclub: Pg. 93, #2: U.S. Irish Bar: Pg. 31, #3: Bar: Pg. 93, Airport: Pg. 14, Airplane: Pg. 20, *Scandinavian Blonde (Swedish Accent): Pg. 20, 51).Living Room and Upstairs Bedroom of lead character's home: Pgs.105-107).

* Plaintiff's Screenplay: Intoxicated Scandinavian (Swedish) Blonde with accent; Defendant's Television Series: Intoxicated Scandinavian (Icelandic-Norse/Danish) Blondes with accents.

(b) <u>Product Placement</u>:

36.     Plaintiff's 'Winter Games' Screenplay focusing on a pool setting as a male significant other questions his somewhat heavy set girlfriend about her eating habits when it comes to pizza. There is pizza floating in the pool; Defendants' Comedy Television

17

Episode focusing on a pool setting as a male significant other questions his somewhat heavy set girlfriend about her eating habits when it comes to pizza. There is pizza floating in the pool.

37.     Plaintiff's Screenplay: Out of the almost endless choices* for business product placement for movies, and hundreds of possible fast food product placements in the world marketplace, "Pizza Hut" is specifically the only fast food placement listed in the credits; Defendants' Television Series. Out of the almost endless choices* for business product placements for television series and hundreds of possible fast food product placements in the world marketplace, "Pizza Hut" is specifically targeted as an inferior product to "Round Table" Pizza in the advertising.

38.     (c) Stolen Comedy Pitch:

39.     On September 17, 2007 Plaintiff presented the following 'Comedy Pitch' at Fox Television Studios in Hollywood: An adult yells "Go Deep!!" and then the adult throws a football to a child who is running and then jumping into a swimming pool to catch a football.  The child is obviously rescued;  In the Defendants' major advertising and content for the 'Unhitched' Television Series, an adult yells "Go Deep!" and then the adult throws a football to a child who falls into a swimming pool after being hit by a football. The child is obviously rescued.

40.     The scene was not only used for the content of the Farrelly / Conundrum Entertainment /Fox 'Unhitched' Television Series but also for the major advertising.   This scene was also used for the advertising for the March 2008   'Unhitched' Television Series The advertising followed the Television Series 'Family Guy.'  (more comparisons for

18

discovery).

END OF UNHITCHED

41.   RE: The movie: "There's Something About Mary:"

The alleged confirmation of a wrong and allegedly fraudulent date discovered in late March 2008, by Mr. White and the in or about two and a half year ongoing investigation, reveals that the similarities between the Screenplay and TSAM or 'the Movie' are so striking that it is a virtual impossibility that the former could have been created independently from the latter, including inter alia, the following: (edited for complaint).

(a) Props:

42.   Plaintiff's Screenplay: The main and unusual prop in the unique "Fight Scene" is an 'upright bag vacuum.' The 'Fight Scene' in TSAM took place in or about 1998. Bag vacuums were becoming outdated in or about 1998. (Pg. 80); Defendant's Movie TSAM: The main and unusual prop in the unique "Fight Scene" is an 'upright bag vacuum.' The 'Fight Scene' in TSAM took place in or about 1998. Bag vacuums were becoming outdated in or about 1998. (Ch. 22).

43.   To have the same stage direction, specifically an outdated bag vacuum as the main prop leading into a 'Fight Scene,' between a man and a little dog in both Mr. White's Screenplay and Defendants' movie TSAM, that is not found in Defendants' screenplay ('Shooting Draft'), is virtually impossible.   The Defendants would have had to refer to Mr. White's Screenplay for the  bag vacuum, because Defendants' Screenplay does not specifically mention a bag vacuum. (Plaintiff's Screenplay: Pg.  80). (Defendants

19

'Fight Scene:'1/13/98 'Shooting Draft.')

44.    Plaintiff's Screenplay: A single prop, (a hamburger), is used by Sam to entice Dusty, the dog, to jump out of specifically an open second story window of a residence. (Pg.81); Defendants' Movie TSAM: A single prop, (a duster), is used by Ted to entice Puffy, the dog, to jump out of specifically an open second story window of a residence. (Ch. 22).

45.    To have the same unique stage direction, specifically using a single prop, to entice the little dog to jump out a second story window that is only found in both Mr. White's Screenplay and the Defendants' movie TSAM, but not Defendants' Screenplay, is virtually impossible. The Defendants' would have had to refer to Mr. White's screenplay, because Defendants' Screenplay does not have the stage direction where a single male uses a single prop to make the dog jump. (Plaintiff's Screenplay: Pg. 81). (Defendants 'Fight Scene:'1998 'Shooting Draft').

46.    Mary ("Winter Games" Screenplay) v. Mary ("TSAM.")

47.    Plaintiff's 'Winter Games' Screenplay: The female lead character is named Mary, and is described as a blonde, blonde, beautiful, and successful young woman. (Pgs.20,51).(Successful Pg.65);   Defendants' Movie TSAM: The female lead character is also named Mary, and is described as blonde, beautiful, and successful young woman.(Ch.1,2,3,4,etc.) (Successful Ch. 11).

48.    Since the two camera angles from the little dog's POV are only found in both Mr. White's screenplay and Defendants movie TSAM, but not in defendants screenplay, (1/13/98 'Shooting Draft,'), the defendants would have to get that scene specific directorial

20

instruction from Mr. White's screenplay.

49.     Plaintiff's Screenplay: On the same page where the 'Fight Scene' ends, Mr. White, casts a Toy Poodle. (Pg.81); Defendants' Movie TSAM: (1/13/98 Shooting Draft): Puffy was originally cast to be a Toy Poodle for the 'Fight Scene.'(Ch.22).

50.     Plaintiff's Screenplay: For comic effect Liz Eard wears animal print clothing and has a lizard like face. (Pg.79); Defendants' Movie TSAM: For comic effect Magda wears animal print clothing and has leathery skin, including her face. (Ch.12 & 22).

51.     Nowhere in the Defendants' Screenplay, (1998 'Shooting Draft),' does it mention that Magda wears animal print clothing.  Since the movie TSAM and Mr. White's Screenplay have both the Defendants 'Magda,' and Mr. White's 'Liz Eard,' wearing animal print clothing, the stage direction had to come from Mr. White's Screenplay.  (Pg.79)

52.     Plaintiff's Screenplay: During the "Fight Scene," Dusty is pulling on specifically the cuff of Sam's pants with his teeth and snarling. (Pg. 80); Defendants' Movie TSAM: During the "Fight Scene," Puffy is pulling on specifically the cuff of Ted's pants with his teeth and snarling. (Ch. 22).

END OF TSAM.

53.     RE: The movie:   Me, Myself, and Irene: (Referred now as the Movie, Irene, or Me, Myself, and Irene.)

54.     Plaintiff alleges that because of successful copyright registration of the wrong and allegedly fraudulent 1989 copyright date for 1998 'Shooting Draft' for TSAM, in combination with the successful and allegedly fraudulent orchestration of wrong and

allegedly fraudulent dates by Farrelly Brothers in their Directors Commentaries, and Decter and Strauss in their Writers Commentaries, Plaintiff quit watching Defendants movies for copyright infringements. Ultimately after extensive comparisons were performed, Plaintiff concluded that the creator(s) of "Irene" had copied directly and substantially from his Screenplay. The similarities between Irene and Screenplay are so striking that it is a virtual impossibility that the former could have been created independently from the latter, including inter alia, the following: (edited for complaint).

(a) Props:

55.    Plaintiff's 'Winter Games' Screenplay: The main props used in the only grocery store scene are multiple shopping carts full of food pushed by the children of a single mom, a single magazine, the checkstand #5 microphone, and a fake brand name embarrassing personal care product. (100-102); Defendants' Movie 'Me, Myself, and Irene' (Irene): The main props used in the only grocery store scene are multiple shopping carts full of food pushed by the children of a single mom, a single newspaper, the checkstand microphone on aisle #5, and a fake brand name embarrassing personal care product.  (Ch. 5 Scene 8).

56.    Plaintiff's Screenplay: Mort, a male lead in the Screenplay, is a customer on checkstand #5.   He is holding a single magazine that he picked up on grocery checkstand #5. (Pg.101); Defendants' Movie 'Irene:' Ted, a male lead in 'Irene', is a customer on the checkstand on aisle #5.  He is holding a single newspaper that he picked up near the grocery checkstand on aisle #5. (Ch.5 Scene 8).

(b) Characters:

22

57.   Plaintiff's Screenplay: The main male character Mort, still holding a magazine, is instructed to casually glance around before grabbing the microphone at checkstand #5. (Directorial Instructions: Pg.101).   Defendants' Movie 'Irene:' The main male character Charlie, still holding a newspaper, casually glances around* for in or about thirty seconds before grabbing the microphone at the checkstand on aisle #5).   (Ch. 5 Scene 8).

END OF IRENE

58.   Re: The DVD cover for the movie "Stuck on You" (referred herein as the Movie and/or 'Stuck on You.')

(a) <u>Characters</u>

59.   Plaintiff's Screenplay: There are two white male twins in the screenplay (Pgs.167-169); Defendants' Movie 'Stuck on You:' There are two white male twins in the movie.

(b) <u>Dialogue</u>

60.   Plaintiff's 'Winter Games' Screenplay: The only two white male twins in the Screenplay have an approximate one minute cameo.   They are asked how it feels to be Olympic Champions.   One of the white male twins responds with a play on words by stating: "I felt <u>beside myself</u>." The other twin stated': When you look as much alike as Phil and I do you often feel <u>beside yourself</u>."(Pg.168); Defendants DVD Cover for 'Stuck on You:' The last line on the DVD cover for the advertising for the movie about two white male twins states: "Stuck on You" will leave you <u>beside yourself</u> with laughter!"

END OF 'STUCK ON YOU'

23

**FIRST CLAIM FOR RELIEF**
**(Fraud as to defendants)**
**(Against All Defendants)**

61.    Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

62.    The Defendants each knowingly and willfully conspired and agreed to engage in the scheme to defraud Plaintiff described in this Complaint.

63.    The Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including but not limited to the acts described in this Complaint.

64.    Plaintiff is informed and believes that Defendants credited as, but not limited to, co-writers and/or producers, and /or co-directors and/or co-executive producers, in some or all media projects listed in Complaint, had privileged and professional knowledge of content of Plaintiff's infringed works. The Defendants' fraudulent copyright registrations, fraudulent and conflicting orchestrations on Defendants' commentaries, and silence as to the known content of stolen copyrighted content for all Defendants' media projects listed in Complaint, is part of the ongoing conspiracy by all Defendants.

65.    At this time Defendants planned to and did utilize the Copyrighted Works for their own benefit and remuneration for several scenes, some major award winning, in several media projects listed in Complaint The defendants foregoing conduct was taken with the primary purpose and intention of defrauding and causing harm to plaintiff which did, in fact, cause harm to plaintiff, and to receive illegal and ill-gotten gains on an ongoing

24

basis.   As a direct result and proximate result of the Defendants' conspiracy to commit fraud, Plaintiff suffered injuries, damages, or losses in an amount to be determined at trial. Plaintiff in addition to compensatory damages, is entitled to punitive damages, for such contemptuous behavior, and as a deterrent against future wrongdoings.

**SECOND CLAIM FOR RELIEF**
**(For violation of the Federal Copyright Act, 17 U.S.C. S 101 et seq.)**
**(Against All Defendants)**

66.   Plaintiff repeats, alleges and incorporates by reference the allegations contained in this Complaint as though fully set forth herein.

67.   In or about, March 2, 2008 through March 30, 2008, defendant Fox began broadcasting "Unhitched," crediting defendants Peter Farrelly and Bobby Farrelly as the co-executive producers of the Fox Television Series and co-directors of the first pilot episode thereof.

68.   Plaintiff alleges upon discovering ongoing infringements for "Unhitched" and a conspiracy of fraud among all Defendants listed in this Complaint, the original investigation for other alleged infringements was reopened. The Defendants each knowingly and willfully conspired and agreed to engage in the scheme to defraud Plaintiff described in this Complaint.

69.   As alleged herein above, the named Defendants have willfully and fraudulently infringed upon Plaintiff's copyright on an ongoing basis, by copying wholly original elements from Plaintiff's March 22, 1991 and April 11, 1994 screenplays without any permission, in "Unhitched," and other copyrighted media projects including "Me, Myself, and Irene," (crediting Farrelly Brothers two of three co-producers, the sole

25

co-directors and two of three co-writers), and "There's Something About Mary," (crediting all five Defendants, Farrelly Brothers, Decter, Strauss and Fox, as co-writers, and the Farrelly Brothers, sole co-directors and sole co-executive producers), and for the last line for the major advertising for the DVD cover for the movie "Stuck on You" (crediting the Farrelly Brothers sole co-writers, sole co-directors and two of four co-producers).

70. Upon information and belief, Defendants have thereafter intentionally broadcast, distributed, published, and otherwise exploited the Screenplay(s) without authorization, in violation of Plaintiff's rights.

71. Upon information and belief, Defendants have intentionally violated the Federal Copyright Act, title 17 U.S.C. S 101 et seq., entitling Plaintiff to all damages and remedies provided by the Act.

72. Upon information and belief, Defendants continue to infringe upon Plaintiff's copyrights, causing Plaintiff irreparable injury and damage. Said infringements entitle Plaintiff to actual and statuary damages, injunctive and other relief provided by the Copyright Act.

### THIRD CLAIM FOR RELIEF
#### (Contributory Copyright Infringement)
#### (Against all Defendants)

73. Plaintiff repeats, alleges, and incorporates by reference the allegations contained in this Complaint as though fully and set forth herein.

74. Defendants infringed Mr. White's copyright by copying the works and by distributing, selling, producing, claiming authorship over and/or contributing to claim authorship over a television series, two motion pictures, and an advertisement on a DVD

26

cover and/or its screenplays and/or it's scripts that infringed Mr. White's copyrighted works and derivatives thereof without Mr. White's permission.

75.    Mr. White is informed and believes that Defendants further infringed Mr. White's works by publicly claiming ownership rights in the protected works and their protected derivatives that belonged to Mr. White. Mr. White is informed and believes that Defendants further infringed Mr. White's protected works by making derivative works from them and by distributing, selling, producing , claiming authorship over and/ or or contributing to claimed authorship over a television series, other media projects and/or scripts that were derived from and infringed Mr. White's copyrighted works and derivatives without Mr. White's permission.

76.   Mr. White is informed and believes that all of Defendants' uses of Mr. White's work all sales of Mr. White's works and all of Defendants' copying of the works were carried out to exercise control over works for the profit and advantage of the Defendants.

77.   Mr. White is informed and believes that Defendants induced, participated, aided and abetted in and profited from the copying of Mr. White's works by defendants herein.

78.    Defendants copied or aided and assisted in the copying of Mr. White's copyrights works without the permission of Mr. White, infringing his copyright.

79.    Because of Defendants' acts of contributory copyright infringement, Mr. White has suffered and will continue to suffer substantial damages to his business in the form of diversion of trade, loss in income and profits and a dilution of the value of his

rights.

80.    As a further direct result of Defendants' acts of contributory copyright infringement, Defendants obtained direct and indirect profits they would not have otherwise realized but for the infringement of Mr. White's works.    Mr. White is entitled to disgorgement of each Defendant's profits directly and indirectly attributed to said Defendant's infringement of the works.

### FOURTH CLAIM FOR RELIEF
**(For an Accounting)**
**(Against All Defendants)**

81.    Plaintiff hereby repeats and realleges by reference all facts and allegations contained in Paragraph 1 through of this Complaint as though fully and completely set forth in full herein.

82.    Plaintiff is entitled to full and complete accounting with respect to all revenues derived by Defendants, in order to determine what profits and/or royalties he is entitled to.

83.    The amounts that the Defendants have collected are unknown to Plaintiff and cannot be ascertained without an accounting.    Plaintiff is informed and believes and thereon alleges that the amount owed to Plaintiff exceeds $750,000,000.

### FIFTH CLAIM FOR RELIEF
**(For Declaratory Relief)**
**(Against All Defendants)**

84.    Plaintiff hereby repeats and realleges by reference all facts and allegations contained in paragraphs 1 through of this Complaint as though fully and completely set forth in full herein.

85.   An actual dispute and controversy now exists between the named Defendants and the Plaintiff's as the ownership/authorship of including but not exclusive to the television series "Unhitched," the grocery store scene in "Me, Myself, and Irene," the multi-award winning "Fight Scene", the characters created in that scene for "There's Something About Mary," and the advertising for last line for DVD cover for the movie "Stuck on You." Plaintiff contends that he should be credited and paid as creator and co-producer thereof.

86.   Plaintiff is informed and believed the names Defendants or each of them may dispute Plaintiff's contention. Plaintiff, therefore, desires and requests a judicial determination and declaration of the respective rights and obligations of the parties regarding "Unhitched," and other Plaintiff's media projects listed herein. Plaintiff seeks to be credited and paid as a creator and co-producer on all future broadcasts, computer downloads, DVD releases, licenses, etc., of "Unhitched" and other media projects listed herein, without exclusion.

## SIXTH CLAIM FOR RELIEF
### (for State Common Law Unfair Competition)
### (Against All Defendants)

87.   Plaintiff hereby repeats and realleges by reference all facts and allegations contained in paragraphs 1 through of this Complaint as though fully and completely set forth in full herein.

88.   Defendants' false or misleading descriptions or representations of fact in Defendants' commercial advertising or promotion of the television series "Unhitched," the movie and DVD releases for "Me, Myself, and Irene," and the movie and DVD releases for

29

"There's Something About Mary," including but not exclusive to in or about twelve out of the thirteen advertising trailers, inside and outside DVD covers and movie posters containing copyrighted characters for "TSAM,' and last line for the advertising for the DVD cover for the movie "Stuck on You," misrepresents, among other things, the nature, characteristics or qualities of Defendants copies and constitutes unfair competition in violation of the common law of the State of California.

89.   Plaintiff is entitled to and requests an injunction restraining Defendants and their representative officers, agent, and employees, and all persons acting in concert with them, from engaging in any further acts in violation of the common laws of the State of California. Plaintiff is further entitled to recover from defendants the damages Plaintiff has sustained and will sustain, and any and all gains, direct and indirect profits and advantages obtained by Defendants as a result of Defendants' wrongful conduct alleged above at at present, the amount of such damages, gains, profits, and advantages cannot be full ascertained by Plaintiff.

90.   Since Defendants have acted willfully and with conscience disregard of Plaintiff's rights, Plaintiff is also entitled to an award of punitive or exemplary damages, according to proof.

WHEREFORE Plaintiff prays,

## ON THE FIRST, SECOND, & THIRD CLAIMS FOR RELIEF

1.   For actual damages and profits in excess of $750,000,000 according to proof.

2.   That defendants be required to pay to Plaintiff such damages as Plaintiff has sustained in consequence of Defendants' infringements of Plaintiff's copyright and to

30

account for:

      a.  All gains, profits, and advantages derived by defendant by his or her infringement of Plaintiff's copyright or such damages as the court shall deem proper within the provisions of the copyright statute, but no less than $750,000,000.

      b.  That Defendant deliver up to by impounded during the pendency of this action all copies of said infringing work as in its possession or under its control and deliver up for destruction all infringing copies and all plates, molds, or other matter used to make infringing copies.

      3.  For statutory damages, costs and attorney fees.

## ON THE FOURTH CLAIM FOR RELIEF

      4.  For an accounting.

## ON THE FIFTH CLAIM FOR RELIEF

      5.  For declaratory relief to credit and pay Plaintiff as a creator and co-producer of "Unhitched," "Me, Myself, and Irene," and "There's Something About Mary," and to credit and pay Plaintiff as a creator and co-producer on all future broadcasts, computer downloads, DVD releases, licensed, etc. of "Unhitched," "Me, Myself, and Irene," and "There's Something About Mary," without exclusion.

## ON THE SIXTH CLAIM FOR RELIEF

      6.  For a preliminary and permanent injunction enjoining Defendants from infringing the copyrights in any manner.

      7.  For actual and profits in excess of $750,000,000 according to proof.

      8.  That Defendant required to pay to Plaintiff such damages as Plaintiff has

31

sustained in consequence of Defendants' infringements of Plaintiff's copyright and to account for:

      a.   All gains, profits, and advantages derived by defendants by his or her infringement of Plaintiff's copyright or such damages as the court shall deem proper within the provisions of the copyright statute, but no less than $750,000,000.

      b.   That Defendants deliver up to by impounded during the pendency of this action all copies of said infringing works in its possession or under its control and deliver up for destruction all infringing copies and all plates, molds, or other matter used to make infringing copies.

      9.   For statutory damages, punitive damages, costs and attorneys' fees.

### ON ALL CLAIMS FOR RELIEF

      10.   For costs of suit and interest.

      11.   For such relief as is just and proper.

DATED:   2/25/11

By: _____
Pro Se

                        Attorneys for Plaintiff STODDARD WHITE JR.

### JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV11- 1987 SJO (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☑) STODDARD WHITE JR. | DEFENDANTS TWENTIETH CENTURY Fox, Inc., et al.,Conundrum Entertainment, Peter J. Farrelly, Robert L. Farrelly Jr. Frontier Pictures Inc., Edward Decter, John J. Strauss, Frank Beddor, Automatic Pictures, Inc. |
|---|---|

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) STODDARD WHITE JR. 2221 West Grouse Ave., Nampa, ID, 83651 (208) 546-4955 cell: (310) 614-3483 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country ☐ 3 | | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ 750,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
FRAUD, COPYRIGHT INFRINGEMENT (17 U.S.C.101 et seq) Diversity 28 U.S.C. S 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | | ☐ 610 Agriculture | ☑ 820 Copyrights |
| ☐ 810 Selective Service | | | **CIVIL RIGHTS** | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | | **SOCIAL SECURITY** |
| | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

# CV11-01987

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                        ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                        ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                        ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Canyon County | Idaho |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles<br>Carson City County | Nevada |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
   Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Stoddard White*        Date  2 / 25 / 11

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |